IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KEVIN SCHMUDE | )<br>) |
| Plaintiff, | )<br>) Case No. 07 CV 457<br>) |
| v. | ) Judge Griesbach<br>) |
| TRICAM INDUSTRIES, INC., ACE<br>GROUP HOLDINGS, INC. and SENTRY<br>INSURANCE, a Mutual Company | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION IN LIMINE TO BAR
EXPERT TESTIMONY UNDER <u>DAUBERT</u>**

TO:   Atty. Kaulas

**PLEASE TAKE NOTICE** that the plaintiff, Kevin Schmude, by his attorneys, Habush Habush & Rottier S.C., hereby moves the District Court, under Federal Rule of Evidence 702, for an order barring the defendants from offering the expert testimony of Dennis Simpson, on the grounds that his testimony does not satisfy the standards of <u>Daubert</u>, and for an order barring the defendants from offering those portions of the expert testimony of Jon VerHalen which rely upon Dennis Simpson's opinions, on the ground that this testimony also does not satisfy the standards of <u>Daubert</u>.

**ARGUMENT**

Federal Rule of Evidence 702 governs the admissibility of expert testimony in federal court. FRE 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469 (1993), the United States Supreme Court held that this Rule superseded the Frye test, which had previously been in use in federal courts.

In Daubert, the plaintiffs sued Merrell Dow for birth defects allegedly caused by the ingestion of the drug Bendectin during pregnancy. The plaintiffs tried to introduce the testimony of several experts who were relying on animal studies in reaching their opinions that Bendectin caused birth defects in humans. The experts did not rely on any studies of the drug's effects on humans.

The Daubert Court set forth guidelines on how trial courts should handle purportedly scientific evidence. Daubert emphasized that trial judges should act as "gatekeepers" to insure that all scientific evidence admitted is both reliable and relevant. Daubert, 509 U.S. at 589.

Focusing on FRE 702, the Daubert Court identified four factors to help trial courts to decide whether the underlying reasoning and methodology of the scientific testimony are both scientifically valid and applicable to the issues in the case. These four factors are:

    (1) can or has the theory or technique been tested;

    (2) has the theory or technique been subjected to peer review and publication;

2

> (3) is the theory or technique generally accepted within the relevant scientific community (what used to be known as the Frye test); and
>
> (4) does the theory or technique have a known or potential rate of error.

Daubert, 509 U.S. at 593-594.

Considering all these factors, Daubert emphasized that the inquiry under FRE 702 is flexible and focuses solely on principles and methodology relied upon by the expert, not on the conclusions generated by the expert. Thus, district courts are to consider only whether the process is scientifically sound, not whether the results of the process are persuasive. Daubert, 509 U.S. at 594-595.

General Electric Co. v. Joiner, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) followed Daubert. Joiner made it clear that whether to admit expert testimony under Daubert is a discretionary determination for the trial court. In addition, Joiner held that the same standard of review -- abuse of discretion -- applies to the trial court's exercise of discretion whether evidence is admitted or excluded.

In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), the United States Supreme Court ruled that the Daubert analysis under Federal Rule of Evidence 702 applied to **all expert witness testimony**, not just to expert **scientific** testimony. Specifically, Kumho Tire applied Daubert to the testimony of a mechanical engineering expert whose evidence was based on his experience and observation.

In Kumho Tire, the Court also made it clear that Rule 702 is flexible, and that it might not be appropriate to apply the four factors listed in Daubert to all cases. However, before expert testimony can be admitted, the trial court must ensure that the

3

expert, in forming his or her opinion for trial, honors the same theories, employs the same methodologies, uses the same tools, and follows the same standards as followed in the expert's nonlitigation work.

In this matter, the defendant, Tricam Industries, Inc., intends to offer the testimony of Dennis Simpson as an expert in the area of ladders. In addition, Tricam's other expert witness, Jon VerHalen, an engineering expert, relies on the opinions of Dennis Simpson in his testimony on behalf of Tricam. However, Dennis Simpson's testimony is inadmissible under the standards of Daubert as set forth above, and therefore Jon VerHalen's expert testimony based on Dennis Simpson's opinions is also inadmissible in this matter.

Kevin Schmude was injured in an accident involving a ladder. It was a brand new ladder, and the accident occurred the first time Kevin Schmude used the ladder.

It is undisputed that the ladder had a manufacturing defect. One of the rivets on the top step of the ladder was somehow misaligned, and so did not go through all the layers of ladder during the manufacturing process. After the accident, the ladder was examined, and the ladder had come apart at the point of this rivet.

It is Kevin Schmude's position that this defective rivet caused a substantial weakening in the ladder, so that it broke apart the first time he used it. Simply put, the ladder broke apart, causing Kevin Schmude to fall. According to Kevin Schmude, the defective rivet was the cause of the accident.

It is Tricam's position that the defective rivet did not weaken the ladder or cause the accident. Instead, according to Tricam, Kevin Schmude lost his balance, fell, and landed on the ladder, right at the proper point to cause the rivet to pop out and the

4

ladder to come apart. Simply put, Kevin Schmude fell, causing the ladder to come apart. According to Tricam, the defective rivet was not a cause of the accident.

Dennis Simpson's job was to test ladders for Tricam. He performed three separate tests. In the first two tests performed by Dennis Simpson, a properly manufactured Tricam ladder of the same model as the accident ladder was able to support 1000 pounds of weight. These tests are not at issue in this motion.

However, Dennis Simpson's third ladder test is the subject of his expert testimony, and the subject of this <u>Daubert</u> motion. In this third test, Dennis Simpson attempted to reproduce the same rivet defect that was present in the accident ladder in a similar Tricam ladder. In other words, Dennis Simpson attempted to manufacture a new ladder with the same rivet defect that was present in Kevin Schmude's ladder.

Dennis Simpson was not able to reproduce this rivet defect using the manufacturing machine. So, he turned the machine off, and essentially, he manually banged on the ladder trying to deform the rivet. He did this until he got a result he thought looked like the defect on the accident ladder.

Dennis Simpson then subjected his ladder with its defective rivet to a test. He laid it on its side, and dropped 380 pounds of weight at a point near the top of the ladder. The defective rivet popped out.

Dennis Simpson then did the same test on a new ladder without any rivet defect. He laid it on its side, and dropped 380 pounds of weight on it at same point near the top of the ladder, however, the failure mechanism was different than in the other ladder (the intact rivet holed through the materials whereas the rivet in the "defective" ladder failed when the peened portion of the rivet broke allowing the rivet to come out of the holes in

5

the ladder without creating substantial damage to those holes). The good rivet popped out in just the same way the defective rivet had popped out in Dennis Simpson's ladder.

From this test, Dennis Simpson concludes that the rivet pops out whether it was a good rivet or a defective rivet. From Dennis Simpson's opinion, Jon VerHalen, Tricam's engineering expert, forms the opinion that Kevin Schmude lost his balance while on the accident ladder, fell off, and landed just at the point on the ladder that the 380 pound weight was dropped on the test ladder by Dennis Simpson, causing the defective rivet to pop out. Jon VerHalen offers the expert opinion that the defective rivet was not a cause of the accident.

As noted above, FRE 702 allows expert opinion testimony only "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Daubert sets forth four factors to be considered in determining the reliability -- and admissibility -- of expert witness testimony under FRE 702. These four factors are:

> (1) can or has the theory or technique been tested;
>
> (2) has the theory or technique been subjected to peer review and publication;
>
> (3) is the theory or technique generally accepted within the relevant scientific community (what used to be known as the Frye test); and
>
> (4) does the theory or technique have a known or potential rate of error.

Daubert, 509 U.S. at 593-594.

Clearly, Dennis Simpson's test fails to meet any of the four Daubert factors, and therefore it is inadmissible under FRE 702. In his deposition, Dennis Simpson admits

6

Case 1:07-cv-00457-WCG   Filed 02/19/08   Page 6 of 8   Document 30

that he invented the ladder test himself. He did not follow any established protocol or rely on any recognized literature with regard to formulating the test. He is not an engineer or a metallurgist, but has extensive knowledge of ladders through his employment. Dennis Simpson also admitted at this deposition that he only performed the ladder test one-time with one set of ladders. He did not attempt to reproduce the test or the results with additional ladders.

No one else has ever attempted to reproduce Dennis Simpson's test. And, because of the way Dennis Simpson produced his test ladder, there is no way for anyone to reproduce his test, or even to know if the defect Dennis Simpson created in his test ladder is even similar to the defect in the accident ladder.

Simply put, Dennis Simpson's testimony fails the Daubert test and is inadmissible in this matter. In addition, where Jon VerHalen relies on Dennis Simpson's test in formulating his own opinions, Jon VerHalen's expert testimony is also inadmissible under Daubert and FRE 702.

The plaintiff, Kevin Schmude, respectfully requests the district court to so rule, granting his motion, and issuing an order barring the defendants from offering the expert testimony of Dennis Simpson, on the grounds that his testimony does not satisfy the standards of Daubert, and an order barring the defendants from offering those portions of the expert testimony of Jon VerHalen which rely upon Dennis Simpson's opinions, on the ground that this testimony also does not satisfy the standards of Daubert.

7

Dated this 19th day of February, 2008.

**HABUSH HABUSH & ROTTIER S.C.**
Attorneys for Plaintiff

By: /s/ D. J. Weis
     D.J. Weis  #1006471

ADDRESS:
126 East Davenport Street
Rhinelander, WI 54501
715/365-1900

8