UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEVIN SCHMUDE

               Plaintiff,

vs.

                               Case No. 07 CV 457

TRICAM INDUSTRIES, ACE GROUP
HOLDINGS, INC., and SENTRY
INSURANCE, a mutual company

               Defendants.

## PRE-TRIAL REPORT
### (March 24, 2008)

NOW COME Defendants, TRICAM INDUSTRIES, INC. and ACE GROUP

HOLDINGS, INC., and in accord with Civil L.R. 16.3(a) submit the following Pre-Trial

Report:

**1.**    **A short summary statement of the facts of the case and theories of liability or defense.**

On September 16, 2004, Kevin Schmude (approximately 350 pounds) was

working in Elkton, Maryland at the Union Hospital for a contractor (Lindgren) which

installs "MRI" rooms. Mr. Schmude climbed a Model 01-48000-00 8-foot fiberglass

stepladder Type I with a 250 pound duty rating manufactured by Tricam and purchased

from Home Depot in Maryland. He testified that he was standing on the ladder's fourth

or fifth step (from the ground) when suddenly the ladder went out from beneath him and

he fell. Mr. Schmude's expert Johnson contends that Schmude fell from the ladder

because the right rear top cap pivot rivet was not "peened" during the ladder's assembly

and as a result the rivet "fell out" as Schmude stood on the ladder causing the fall. (Exhibit 1)

Tricam contends that Schmude's fall was caused by his loss of balance. According to the Defendants' experts and contrary to Mr. Johnson, the right rear top cap pivot rivet had been peened, but not peened properly. The defense contends that regardless of improper peening, the rivet did not fall out resulting in Plaintiff's fall. The defense contends that post-accident the rivet was severed and the rivet's severance was the result of Mr. Schmude's impact with the ladder during his fall. Mr. Schmude's Complaint alleges that the Defendants, Tricam Industries, Inc., and its insurer, Ace Group Holdings, Inc.[1], are liable to him on theories of strict products liability and negligence.

## 2.   Statement of the issues

### A.   Factual Issues

The Plaintiff contends that Tricam failed to "peen" the pivot rivet and as a result the rivet "fell out" of the ladder rendering the ladder "unreasonably dangerous" and causing Mr. Schmude's fall. The Defendant denies that it failed to peen the rivet, but admits that the rivet was not peened properly. Defendant denies that the ladder was unreasonably dangerous and contends that the fall was the result of Mr. Schmude's negligence.

The Defendant admits that Mr. Schmude suffered a "soft tissue" injury as a result of his fall. The Defendant contends, through Dr. Weiss, that Schmude's injury resolved itself within 8-12 weeks of his fall. It is uncontested that Schmude had a pre-existing back injury which had occurred before his fall. However, the relationship, if any,

---

[1] Defendants contend that the existence of the insurer should not be made known to the jury since Tricam's self-insured retention is $1 million. As a result, Defendant Tricam Industries, Inc. is prejudiced if the jury is informed that Tricam is insured.

2

between that injury and Schmude's present condition is unclear. Dr. Durette, Plaintiff's medical expert, denies that Plaintiff's prior back condition was aggravated by the fall, but contends that due to back pain, Schmude's ability to work was reduced. Mr. Schmude claims that his pain and suffering, treatment and loss of earning capacity since his fall is causally related to the fall.

**B.      Legal Issues**

Plaintiff has moved to bar the Defendant's impeachment of Mr. Schmude as a result of Schmude's felony conviction. Plaintiff contends that the court should bar evidence of Schmude's felony because the "prejudice" created by its disclosure outweighs the probative value of the impeachment. Plaintiff contends there are no contraverted issues of liability or damages which raise issues regarding Schmude's credibility.

## SCHMUDE'S TESTIMONY

Mr. Schmude testified that he purchased the accident ladder at Home Depot 45 minutes before his fall occurred and provided the receipt to his attorney (Schmude, Pages 22-23). That testimony was false. In fact, Mr. Schmude (in response to a Request to Admit Facts) first denied knowledge of whether or not he had in fact purchased the ladder six days before the fall. Then, after presentation of the investigation of Union Hospital which proved that Mr. Schmude was the source of the receipt for the accident ladder, Mr. Schmude then admitted that in fact the ladder had been purchased six days before his fall. Schmude's false deposition testimony is consequential because it is the basis for Mr. Johnson's (Plaintiff's expert) theory of ladder failure.

Furthermore, Mr. Schmude testified that he fell four to five feet from the ladder (fourth or fifth step from the floor) (Schmude, Page 34). However, he told Union

3

Hospital personnel that he fell "six to eight feet". Since the ladder is eight feet tall, if Mr. Schmude fell six to eight feet, he would have been standing on the top cap or the step below the top cap. The user is prohibited from using either as a support and standing at that level is negligence.

The defense contends that Mr. Schmude impacted the ladder at the time of the fall and caused the subject rivet's fracture. Mr. Schmude claims that he doesn't know whether or not he fell on the accident ladder at the time of the occurrence. Therefore, contrary to the Plaintiff's claim in Plaintiff's motion in limine, Mr. Schmude's credibility is at issue regarding liability. Thus, Mr. Schmude's impeachment by felony is germane to the defense case and whatever prejudice is claimed does not trump the Defendants' right to impeach Mr. Schmude.

### C.    Impeachment and Damages Issues

Plaintiff also contends in his motion in limine that Mr. Schmude's credibility is not related to the damages issue. That statement is incorrect. Mr. Schmude was examined by Dr. Weiss on behalf of the intervenor following Schmude's fall. Schmude continually "moved" the portion of his body which caused his pain during Weiss' examinations. Likewise, Schmude's test results did not support the complaints he made to his physicians and to Dr. Weiss. Also, Mr. Schmude denies the fact that he reported to his pre-fall doctor (Fernandes) that Schmude had "chronic back pain" before his fall. Dr. Weiss concluded based upon Schmude's contradictory claims of pain and objective tests that Mr. Schmude "exaggerated" his symptoms. Likewise, Dr. Bruma, Schmude's treating physician, concluded that Mr. Schmude was a "malingerer" (Exhibit 2). Therefore, Mr. Schmude's credibility regarding his damages claim is obviously at issue.

4

## A PARTY'S RIGHT TO IMPEACH A WITNESS IN A CIVIL CASE WITH A FELONY CONVICTION IS NOT ELIMINATED BY A CLAIM OF PREJUDICE

Plaintiff's "justification" for barring the evidence of Mr. Schmude's felony conviction and thus his impeachment is the claim that Mr. Schmude "hasn't been in any trouble since his conviction[2]" and that the crime he was convicted of "has nothing to do with this lawsuit". However, the Supreme Court decided this issue in 1991. The Court held that Rule 609(a)(1) requires a Judge to permit impeachment of a witness with evidence of a prior felony conviction regardless of prejudice to the witness or the party offering the testimony. *Green v. Bock Laundry Machine Co.*, 490 U.S. 504; *Gara v. Costa*, 971 F.2d 1325 (7th Cir. 1992). Therefore, this Court is obliged to permit evidence of Mr. Schmude's felony conviction as to the crime(s) charged, date(s) and disposition(s) and to submit the applicable instruction to the jury on that issue if the instruction is requested.

## JURY INSTRUCTIONS ON BOTH "STRICT LIABILITY" AND "NEGLIGENCE" THEORIES

1.      Defendants contend that instructing the jury on both negligence and strict products liability theories pleaded by the Plaintiff is duplicative and confusing. The operative facts of the case require the same finding [i.e., (a) was the accident ladder unreasonably dangerous as a result of a non-peened rivet and (b) did the unreasonably dangerous condition cause Plaintiff's fall?] Submitting the case to the jury on both negligence and strict products liability theories may result in a contradictory verdict. Mr. Johnson (Plaintiff's expert) claims that as a result of failing to peen the subject rivet, the Tricam ladder was unreasonably dangerous (Exhibit 1). However, if the jury finds that the ladder was not "unreasonably dangerous", a finding of "negligence" on the part of the

---

[2] Defendant's investigation suggests that Mr. Schmude has been convicted of at least two felonies.

Defendant in failing to properly peen the rivet is irrelevant. The jury must find that the condition of the ladder at the time of Plaintiff's fall rendered the ladder "unreasonably dangerous" regardless of whether or not Tricam was negligent in manufacturing the ladder.

Wisconsin law, *Greiten v. La Dow*, 70 Wis.2d 589 (1975), supporting the concept that a product which is not "unreasonably dangerous" can still be the subject of liability if a jury finds that the manufacturer was "negligent" is not applicable to *Schmude's* facts. *Greiten* can be easily distinguished from Schmude. In *Greiten*, the Court held that even though the jury found the product's design was not "unreasonably dangerous", the Defendant's failure to warn of dangers in using the product, which the manufacturer became aware of after the product's manufacture could constitute negligence and proximate cause of Plaintiff's injury.

In *Schmude*, there is no evidence that Tricam had knowledge of a failure to peen a rivet. Thus, the rationalization employed in *Greiten* cannot be applied to *Schmude*. Furthermore, no claim has been made by Plaintiff of a "post-manufacture failure to warn" claim nor has any expert testimony been offered suggesting that Schmude should have been warned about using the subject ladder. Lastly, Schmude admits he never read the warnings and instructions on the ladder. Thus, a "failure to warn" theory has no factual support. (Schmude, Page 29). Thus, both "negligence" and "strict products liability" theories of recovery should not be submitted to the jury.

Lastly, the *Greiten* rationale was questioned in *Sharp v. Case Corp.*, 227 Wis.2d 1 (1999) and an excellent discussion of the Restatement of Torts (3rd) addressing the fact scenario in *Schmude* is found in *Jarvis v. Ford Motor Co.*, 69 F.Supp.2d 582. *Jarvis* dealt with inconsistent verdicts involving a cruise control system. The jury found that the

6

system was not unreasonably dangerous, yet concluded that Ford was negligent in designing the system. The Court held:

> "...the Defendant's position that a finding of no defect and a finding of negligence are inconsistent as a matter of law in a products liability case is well supported. The Restatement (3rd) ... instructions that 'two or more factually identical defective design claims ...should not be submitted to the trier of fact in the same case under different doctrinal labels" (warning that submission of the same claim on multiple theories of recovery... would create confusion and may well result in inconsistent results).

Likewise, this Court should not be bound by the "rationale" expressed in *Greiten*, when *Greiten* can easily be distinguished from *Schmude's* facts.

## MR. JOHNSON'S OPINION OF PROXIMATE CAUSE FAILS TO MEET RULE 702 REQUIREMENTS FOR ADMISSION

2.      Defendants contend that Mr. Johnson's Rule 26(a)(2)(B) report fails to meet Rule 702's requirements for the admission of Mr. Johnson's opinion that there is proximate cause between the rivet which "fell out" of the ladder and Mr. Schmude's fall. Mr. Johnson performed no test which would result in a ladder collapse as the result of the subject rivet "falling out". Therefore, his opinion in that regard is ipse dixit. Mr. Johnson simply concludes: "If the single rivet joint fails, the ladder loses its stability and will collapse". (Exhibit 1). However, Mr. Johnson performed no test which resulted in this claimed phenomena occurring. In fact, the Defendant's expert, Jon Ver Halen, tested Mr. Johnson's theory and found that no "collapse" resulted because the rail simply moved ½ inch into the top cap when a "rivet" was suddenly removed. Thus, Mr. Johnson's theory of proximity is only his subjective opinion and thus, may not be offered as evidence. *Clark v. Takata Corp.*, 192 F.3d 780 (1998) is instructive in this regard. In *Clark*, the Court held that the "contested issue" was:

> "whether the lap belt mechanism failed and became unlatched as the vehicle rolled down the embankment causing Plaintiff to hit his head and

suffer injury or whether Clark was latched when Clark was found following the rollover and was released by one of the people assisting him."

Plaintiff's expert, Dr. Lafferty, concluded that the lap belt's mechanism failed causing the injury. However, Lafferty did no testing to support that conclusion. The Court held that Dr. Lafferty's opinion was inadmissible because the opinion was based only upon the *ipse dixit* or bare assertion of Dr. Lafferty. Lafferty had performed no "testing, re-enactments, or demonstration" to support his conclusion. Likewise, Mr. Johnson's opinion that the "unpeened rivet fell out and the ladder collapsed" should be barred for the same reason.

## MOTION IN LIMINE TO BAR MR. JOHNSON AND PLAINTIFF'S ATTORNEY FROM CHANGING THE OPINION OF DEFECT AND PROXIMATE CAUSE[3] EXPRESSED IN MR. JOHNSON'S RULE 26(a)(2)(B) REPORT

3.      Mr. Johnson, Plaintiff's liability expert, provided a report on November 10, 2007 (Exhibit 1). In that report, he recited the results of his inspection of the accident ladder and his conclusions regarding the defect which he claims he found. Mr. Johnson states at Pg. 2, ¶2 that:

> "...Referring to Exhibit D a proper riveted top and leg assembly as shown in a cut away view, Note that the rivet is <u>peened</u> over in a 360° mushroom shape to lock the rivet in place and permanently secure the assembly. <u>Without a proper peening operation, the rivet will fall out of the hole and appear unmolested as shown in Exhibit E.</u> Exhibit E is the actual rivet that failed on Schmude's ladder. <u>Note that the (subject) rivet is not in any way damaged or distorted.</u>

> "...In Exhibit D, the cut away of a properly assembled ladder leg/top rivet of interest is the distortion of the rivet's shank as a result of the compressive force required in the peening operation."

---

[3] If the Court rules that Johnson's testimony regarding proximate cause is barred, this portion of Defendant's Motion is mooted.

"...Compare this cut away rivet to the rivet that failed in Schmude's ladder (Exhibit E) which shows no distortion or peening of the end."

The defense contends that the rivet depicted in Exhibit E is not "unpeened" as Johnson claims but a severed rivet. The fact that the rivet was "severed" was provided to the Plaintiff during Mr. Simpson's deposition taken on September 6, 2007, a month before Mr. Johnson's report.

Page 34, Line 21:

Q.     So it's your testimony that the end so to speak of this barrel (of the rivet) shows adequate and sufficient peening?

A.     No. That particular portion of the barrel although after it it's in two pieces so the rivet is already in two pieces so what I'm looking at there is the remaining portion of the barrel of the rivet.

Q.     The fractured portion?

A.     The fractured portion. I wouldn't call that the ultimate end of the rivet at this point but that now is two pieces, it's the end but not originally.

Q.     The reason that I defined these before is as I understand it the rivet as you inspected on the day that you looked at the ladder was in two pieces; right?

A.     Correct.

Q.     And one of the pieces is the piece that we seen in F, G and C for instances?

A.     We just defined it as barrel.

Q.     Right. And I'm going to call that the barrel end.

A.     Okay.

Q.     And then the other piece is the piece that you see in A and B.

A.     Yeah.

Q.     And that's the piece that's got the cap on it.

9

A. On the other end it has the cap, yes, of these pictures.

Q. Are there any photographs in this set at all that show a fracture site of the barrel end of the rivet?

A. That would be what I identify as D. There's a picture showing the barrel side fracture side of the rivet.

* * * * *

Page 40, Line 16:

Q. I apologize because I think I asked this before, but I want to make absolutely clear, it's your testimony that what you observed was a fractured rivet with the barrel end of the rivet being separated from the cap end of the rivet; correct?

A. Yes.

Additionally, Jon Ver Halen, the defense expert, provided the same information to the Plaintiff in his Rule 26 report. Ver Halen stated that Mr. Johnson incorrectly determined that the subject rivet had not been "peened".

> "Mr. Johnson's report indicates that the rivet '... was not set (peened)... as a result the side rail slipped off the rivet ...'"

Mr. Johnson did not provide a "rebuttal" report suggesting that Jon Ver Halen had misinterpreted Johnson's observation that the subject rivet had not been peened.

## MOTION TO BAR

Defendant moves to bar Mr. Johnson and/or Mr. Schmude's counsel from suggesting or offering the opinion that the subject rivet was (a) fractured or partially fractured during the peening process or (b) "weakened" in some fashion during the ladder's use or (c) claiming that Mr. Schmude's fall was caused by a process not disclosed and/or contrary to Mr. Johnson's Rule 26(a)(2)(B) report. Mr. Johnson (and Plaintiff's attorney) are bound by the theory of defect and proximate cause which Mr. Johnson

10

provided in his Rule 26(a)(2)(B) report. An attempt at trial to create another theory is barred by Rule 37(c) because the defense would be prejudiced by a change in Johnson's theory of defect and causation. *Finley v. Marathon Oil*, 75 F.3d 1225 (7th Cir. 1996).

> "Rule 37(c)(1) provides that "a party without substantial justification fails to disclose information required by Rule 26(a) shall not unless such failure is harmless be permitted to use such evidence at trial ... any information not so disclosed."

Rule 37(c) requires the "automatic barring" of (a) undisclosed expert opinion or (b) the basis therefore, unless the party who failed to provide the information can show that its violation of Rule 26(a) was either justified or harmless.

In *Schmude*, the fact that the subject rivet is fractured was provided by the defense to Plaintiff both before and after Mr. Johnson's report. Mr. Johnson did not provide any rebuttal report suggesting that his Rule 26(a)(2)(b) report was mis-interpreted by Simpson or Ver Halen. Furthermore, an attempt by Plaintiff and/or Johnson to change the theory of defect and proximate cause is not harmless.

Page 49, Line 2 (Jon Ver Halen):

Q. Listen to my question closely, if you can. There's nothing that you've been able to do from an engineering analysis to rule out the possibility that the rivet could have been weakened during the peening process so that it was either loose in there, broken off from the peened portion of it or so substantially weakened that it broke as Mr. Schmude was going up or on the ladder, and that when the rivet popped out and the rail dropped the half inch, that because Mr. Schmude was working above his head, that that caused him to lose his balance and then fall off the ladder? There's nothing in this fact situation to rule that out? I know you don't believe that's what occurred, but there's nothing in this fact situation to rule that out; true?

A. Not that I have properly investigated. If that would have been the theory initially, I would have investigated other aspects of this rivet failure. (emphasis added)

11

Mr. Ver Halen admitted that he did no "investigation" of a theory that should be "ruled out" (i.e., the subject rivet was "weakened" during the peening process and fractured). Rule 702's requirements of disclosure required that the Plaintiff to provide "all experts' opinions and the basis therefore". Thus, there was no need for Ver Halen to perform an investigation of a theory which Mr. Johnson did not posit in his Rule 26 report. Johnson stated that the subject rivet <u>was not peened</u>. Johnson <u>does not state in his Rule 26 report that the rivet was "weakened during the peening process</u>. Johnson <u>does not claim in his Rule 26 report that the subject rivet fractured during Schmude's use of the ladder. Johnson claimed in his Rule 26 report that that the rivet simply "fell out"</u>.

The defense did not retain a metallurgist nor had a metallurgical examination of the rivet to determine if it had been "weakened" during the peening process because the defense is not required to respond to a theory of defect and causation not included in Plaintiff's expert's Rule 26 report. Therefore, an attempt by the Plaintiff to change the theory of defect and causation not expressed in Johnson's Rule 26(a)(2)(B) report, should be barred pursuant to Rule 37(c).

### Response to Plaintiff's Motion to Bar Evidence of Schmude's "Mental Illness" or Dr. Bruma's description of Schmude as a "Malingerer"

### "Mental Illness"

4.     The nature of Mr. Schmude's "mental illness" which Plaintiff seeks to bar is not described in Plaintiff's motion. Furthermore, Plaintiff's instruction (1768) which addresses Plaitniff's claimed elements of damages include "pain, suffering, including any physical pain, worry, distress …". Moreover, the jury is instructed when considering future damages to consider Schmude's prior "<u>mental</u>" condition. Therefore, Schmude's mental illness is germane to the jury's consideration of Schmude's future damages, if any.

Lastly, Plaintiff's contention that the subject of Schmude's "mental illness" should be barred, is contrary to Plaintiff's position taken in a Request to Admits Facts served upon the Defendant and the "medical expenses". (Plaintiff's Exhibit 19). Plaintiff claims that the "Psychiatric Interview" of February 18, 2005 and the testing that accompanied the interview were "reasonable and necessary and caused by the incident which is the subject of this lawsuit". (Exhibit 3).

In that interview, Dr. Moore concluded that Schmude suffered from "(1) pain disorder associated with both psychological factors and a general medical condition – chronic; (2) mixed personality disorder with schizoid and antisocial factors; and (3) chronic pain syndrome." Moore concluded that "while Schmude is a poor candidate for psychotherapy, that opportunity should be offered."

Because Plaintiff placed Mr. Schmude's psychological condition as measured by Dr. Moore into issue, there is no basis for now contending that the information provided by Moore is "too prejudicial" and must be barred.

Lastly, the evidence will also reflect that Schmude suffered from "mental conditions" prior to his fall from the ladder. Among his other maladies, he has a "history of depression and an anxiety disorder". Plaintiff does not claim Plaintiff's mental condition is irrelevant. Plaintiff claims the evidence is "prejudicial" but fails to explain why the jury should not consider the evidence in light of the Plaintiff's claim for past and future damages.

13

## "Malingerer"

The degree to which Mr. Schmude is a "malingerer" or exaggerated his symptoms is raised by Plaintiff during the cross-examination of Dr. Weiss, the IME examiner retained by the intervenor. Plaintiff's attorney took the position in his cross-examination of Weiss that since Dr. Weiss was retained by the workman's compensation carrier to examine Mr. Schmude, Dr. Weiss' opinions regarding Mr. Schmude's injury claims are invalid. The theme of the cross-examination was that Weiss' interest, bias and prejudice against claimants overwhelms Weiss' objectivity. Furthermore, Plaintiff's cross-examination suggested that if Weiss was objective in offering his medical opinions, Weiss' income made by performing "IME's" for insurance companies and providing "IME" reports would be dramatically reduced (Dr. Weiss, Pages 50-58).

Dr. Weiss testified that Schmude exaggerated his symptoms (Pages 39-40). Weiss also concluded that there was no medical basis for Schmude's complaints.

Thus, the issue is raised (a) were Mr. Schmude's subjective complaints made to Dr. Weiss consistent with Weiss' objective findings and test results, or (b) were Weiss' opinions regarding Mr. Schmude's claimed injury based upon Weiss' bias or made to gain financially? Dr. Bruma, who was not hired to perform an IME by an insurance company and was one of Schmude's treating physicians, reported that Mr. Schmude was a "malingerer." (Exhibit 2). Regardless of whether or not Dr. Bruma changed her mind on that issue,[4] it is germane that her opinion of Schmude corroborates Dr. Weiss's alleged biased opinions.

Plaintiff's argument:

---

[4] Plaintiff's contentions that Bruma changed her mind is simply Plaintiff's argument. There is no record stating that Bruma's observation of Mr. Schmude ever "changed" from her observation included in Exhibit 2.

14

> "In addition, neither Dr. Bruma nor the physical therapist
> who conducted the functional capacity tests were named as
> experts by Tricam in this matter"

is dispositive of nothing. Federal Rule 803 does not create an obligation to name a

physician as a witness even if the declarant is available to testify. Defendant chooses, as

Plaintiff's chooses, to use Plaintiff's medical reports and records as evidence as permitted

by Rule 803. (See Plaintiff's Exhibits 15 and 17). Plaintiff's statement that:

> "It is unfair to Kevin Schmude to allow references to "malingering" to
> remain in the medical records when it is clear that none of the medical
> personnel who examined came to <u>an ultimate conclusion</u> that Kevin
> Schmude was malingering"

is contrary to the evidence. Dr. Bruma came to the same conclusion that Dr. Weiss

reported. Thus, Dr. Bruma's observation of Mr. Schmude is relevant and whatever

"prejudice" her observation created is not barred because her opinion is adverse to Mr.

Schmude's claim.


3.      **Witnesses**

The defense intends to call:

(a)     Jon Ver Halen, 7200 Harvard, Forest Park, Illinois

(b)     Dennis Simpson, an employee of Tricam Industries, Inc. ("live" if he is in
        the United States at the time of trial)

(c)     Dr. Stephen Weiss (by deposition)

(d)     Barbara Lemke, 1166 Quail Court, Suite 305, Pewaukee, Wisconsin

(e)     The parties have stipulated that record keepers for the records subpoenaed,
        obtained by authorization, or provided by counsel need not be called as
        witnesses to establish the records' authenticity. However, objections
        regarding admissibility of records are reserved.

15

4. **Narrative of experts' background**

(a) Jon Ver Halen has an engineering degree from Purdue, is a Registered Professional Engineer (Illinois), a member of a number of ANSI Ladder Committees, an expert regarding the design and manufacture of ladders, and has performed ANSI tests upon prototypes of ladders including the accident ladder. He has also reproduced the damage patterns to ladders involved in ladder accidents. Ver Halen has "reconstructed" ladder accidents based upon his knowledge, experience, ladder testing and testing by others.

(b) Dennis Simpson is familiar with Tricam's manufacturing processes and quality control. Mr. Simpson also performs ANSI testing of Tricam ladders. He performed tests on an exemplar ladder after he recreated the accident ladder's pre-accident damage pattern. Mr. Simpson will testify to the procedure he followed in order to achieve those results including the ANSI and non-ANSI tests he performed upon the exemplar ladder which he created.

(c) Dr. Weiss is an orthopedic surgeon who is licensed in the State of Illinois, Wisconsin, California and Arizona. He graduated from Columbia University with a Bachelor of Arts, New York University Medical Center with a degree as a medical doctor, performed an internship at the Hospital for Joint Diseases Orthopedic Institute, New York City, New York, and performed an orthopedic residency at the same location. Dr. Weiss was the Chief Resident at the Stanford University Medical Center and has been in private practice in the area of orthopedic surgery since 1976. Dr. Weiss is Board Certified by the American Board of Orthopedic Surgery and Arthroscopic Board of North American, the American Board of Independent Medical Examiners. Dr. Weiss examined Mr. Schmude and reported his findings at the request of the intervenor.

(d) Barbara Lemke N.S. C.R.C. L.P.C. performed a vocational evaluation regarding Mr. Schmude's claimed loss of earning capacity on behalf of the intervenor. Ms. Lemke is an expert in determining the types of employment (and wage scales) that are available to individuals with claimed reduced employment capacity. She offered opinions regarding Mr. Schmude's claimed loss of earning capacity at the request of the intervenor.

5. **Exhibits**

1000. Accident ladder

1001. Videotape of testing performed by Dennis Simpson

1002. Exemplar ladder which was the subject of Simpson's exemplar testing

16

1003. ANSI A14.5

1004. OSHA 1926.1053

1005. Records of Kevin Schmude's felony convictions

1006. Medical records of Ministry Medical Group 12/2/02 – 8/25/04

1007. Medical records of Ministry Medical Group 11/06/06 – 5/23/07

1008. Medical records of Ministry Medical Group 9/23/04 – 7/6/05

1009. Medical reports of Dr. Stephen Weiss

1010. Medical records of Dr. Bruma

1011. Records of Pain Diagnostic Associates 24 pgs.

1012. Records of Pain Diagnostic Associates 10/25/07

1013. Records of St. Mary's Hospital 9/16/04 – present

1014. Records of St. Mary's Hospital 6/21/82 – 1/3/05

1015. Records of Gillette Primary Care Clinic

1016. Records of Previa Clinic 9/22/05 – 9/55/05

1017. Records of Physical Medicine of Northern Wisconsin

1018. Records of Dickenson County Healthcare 7/26/05 (100 pgs)

1019. Records of Dickinson County Health Care System 7/18/05 – 8/3/05

1020. Records of Kerber Rose & Associates 8/8/05 (11 pgs)

1021. Records of Community Memorial Hospital 12/19/05 – 11/28/05

1022. Lumbar spine residual functional capacity questionnaire

1023. Ladder receipt from Home Depot

1024. Photographs taken within the Union Hospital

1025. Medical records of Dr. Tan

1026. Records maintained by Lindgren (Plaintiff's employer)

1027. Union Hospital records

1028. Sentry Insurance records

1029. Videotape testing done by Jon Ver Halen

1030. Quality control documents provided to opposing counsel for month of accident ladder's manufacture

1031. Jon Ver Halen's photograph of accident ladder No. 7

1032. Jon Ver Halen's photograph of accident ladder No. 9

1033. Jon Ver Halen's photograph of accident ladder No. 10

1034. Jon Ver Halen's photograph of accident ladder No. 14

1035. Jon Ver Halen's photograph of accident ladder No. 15

1036. Jon Ver Halen's photograph of accident ladder No. 16

1037. Jon Ver Halen's photograph of accident ladder No. 17

1038. Jon Ver Halen's photograph of accident ladder No. 18

1039. Jon Ver Halen's photograph of accident ladder No. 19

1040. Jon Ver Halen's photograph of accident ladder No. 20

1041. Jon Ver Halen's photograph of accident ladder No. 21

1042. Jon Ver Halen's photograph of accident ladder No. 22

1043. Jon Ver Halen's photograph of accident ladder No. 23

1044. Jon Ver Halen's photograph of accident ladder No. 24

1045. Unpeened top cap pivot rivet (for accident ladder model)

1046. Response to Defendant's Request for Admissions

1047. Amended Response to Defendant's Request for Admissions

**6.** **Deposition Designation**

Mr. Schmude's deposition (videotape), Page 20, Line 17 – Page 23, Line 23

18

Dr. Stephen Weiss' deposition (entire) subject to ruling on Mr. Weis' objections.

**7.**     **Estimate of trial time**

Defendants believe that the case will take four days.

**8.**     **(a)**     **Voir Dire**

      1.     Have you ever made claim(s) for personal injury including a claim for an injury in the workplace? Has anyone in your family or close circle of friends make such a claim? What was/were circumstances of the claim(s)? Was the claim job related? If so, how was the claim resolved? If the claim was not workplace related, how was the claim resolved? What injury resulted?

      2.     Do you own a ladder? Step/Extension/Muti-use and brand? What type do you prefer?

      3.     Have you ever been employed on a job like construction, where ladders used daily?

      4.     Did you, family member, close friend ever fall from a ladder? Whose fault?

      5.     Did you ever "almost fall" from a ladder? Whose fault?

      6.     Have you ever been "safety man" on a job or been responsible for OSHA compliance? Have you ever directed a safety meeting on the job?

      7.     Do you oppose the concept that a party may retain and pay an expert witness to assist in the prosecution or defense of a lawsuit?

    **(b)**     **Proposed instructions on substantive issues**

Attached (cautionary instructions are not included).

    **(c)**     **Proposed verdict form**

Attached. (Plaintiff's damages instructions supported by the evidence to be inserted).

Respectfully Submitted,

TRICAM INDUSTRIES INC. and ACE
GROUP HOLDINGS

/s/ Paul V. Kaulas
_____
Paul V. Kaulas (Illinois Atty. No. 6184224)
Attorney for Defendants, Tricam Industries,
Inc. and Ace Group Holdings

Paul V. Kaulas
McVey & Parsky, LLC
30 N. LaSalle St., Suite 2100
Chicago, IL 60602
Phone: (312) 551-2130
Fax: (312) 551-2131
Email: pvk@mcveyparsky-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notice of Electronic Filing:

D.J. Weis
Habush, Habush & Rottier, S.C.
126 East Davenport Street
Rhinelander, WI 54501

Eric Charlton Pease
Piehler & Strande
P.O. Box 1287
Wausau, WI 54403

McVEY & PARSKY, LLC
Attorney for Defendant
30 North LaSalle Street
Suite 2100
Chicago, IL 60602
Tel: (312) 551-2130
Fax: (312) 551-2131

By:     /s/ Paul V. Kaulas
         Paul V. Kaulas (Illinois Atty. No. 6184224)